2024 IL App (2d) 240532-U
No. 2-24-0532
Order filed December 16, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-590 |
| ANTHONY L. REDD, | ) ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The evidence supported the trial court's findings that that no set of conditions would mitigate the danger defendant posed. The trial court did not abuse its discretion in granting the State's petition for pretrial detention.

¶ 2    Defendant was charged by indictment with (1) home invasion with a firearm (720 ILCS 5/19-6(a)(3)), (2) armed robbery (720 ILCS 5/18-2(a)(2)), (3) aggravated unlawful restraint (720 ILCS 5/10-3.1(a)), (4) home invasion with a dangerous weapon (720 ILCS 5/19-6(a)(1)), and (5) aggravated robbery (720 ILCS 5/18-2(a)(2)). On September 4, 2024, following the grant of the

State's petition to detain, the trial court denied defendant's motion for relief. He appeals from that order. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     On October 26, 2023, the State filed a verified petition to detain defendant pursuant to 725 ILCS 5/110-6.1. The petition sought detention due to defendant's charges for the forcible felonies of home invasion and armed robbery, and alleged that defendant poses a real and present threat to the safety of the victim, J.D., which no set of pretrial release conditions can mitigate.

¶ 5     At the pretrial detention hearing, the State introduced the De Kalb Police Department's synopsis of facts. The synopsis stated that De Kalb police officers responded to an armed robbery that occurred on October 2, 2023. The victim, J.D., told police that he left his apartment and began walking to his car. When he attempted to open his car, he felt an object press against the back of his head. He turned around and saw a black male pointing a handgun at him. He was told to hand over his phone and money or he would be shot. J.D. told the man that he did not have any money. The man said, "let's go" and pushed the handgun into J.D.'s back, leading him back into his apartment. The man followed J.D. into his bedroom where he retrieved his wallet and gave the man his money. Both men exited the apartment and walked back to J.D.'s car. The man told J.D. that if he called the police, he would kill him. J.D. got into his car and drove away. He described the perpetrator as a black male, approximately 5 feet 7 inches tall, slim build, wearing a dark-colored long jacket and a black durag.

¶ 6     During review of surveillance video from the area, De Kalb police observed J.D. walking towards his residence in front of a black man holding a shiny object in his right hand and wearing clothes that matched J.D.'s description. The man can be heard on video saying, "let's go mother f***" and "I am going to pop yo ass." De Kalb police also reviewed video from a nearby Shell

station that showed the same man, wearing the same clothing, on the night of the incident. The man can be seen walking up the porch of 117 East Locust Street.

¶ 7 On October 5, 2023, De Kalb police made contact with a male for an unrelated case who identified himself as Lamar Webb. Officers ultimately determined that the man was Anthony Redd, the defendant. Redd matched the description of the suspect in the October 2, 2023, incident. He resides at 117 East Locust Street.

¶ 8 Officers executed a search warrant at defendant's residence on October 25, 2023, and discovered the clothing worn by the man in the surveillance videos. Defendant confirmed to the officers that he is the man seen in the Shell station video. He stated that he knows someone that lives near J.D.'s residence. He further stated that he may have had a conversation with someone in the backyard of a residence in the alley on the night of the incident.

¶ 9 The State argued that defendant is a danger to J.D. and the community and there exists no "indication that this defendant would follow orders of the Court." The State argued that no set of conditions could mitigate his dangerousness as defendant is a multiple-time felon whose criminal history is indicative of violent, abusive, or assaultive behavior. Defendant has a lengthy criminal record with convictions for domestic battery, felon in possession of firearm, and multiple drug crimes. Defendant was charged with unlawful possession of a weapon by a felon and aggravated assault in 2010, but those charges were ultimately dismissed.

¶ 10 Defendant argued that J.D. had not identified him as the perpetrator. He took issue with the argument that his prior criminal history was indicative of violent behavior, as most of his charges and convictions were drug related. He argued that electronic home monitoring would mitigate any risk of his dangerousness as it would allow him to stay home so he could care for his ailing mother.

¶ 11    In granting the State's petition to detain defendant, the trial court found, in relevant part, as follows:

"In looking at the factors that the Court is to consider on whether to deny pretrial release, I've just indicated the nature and circumstances of the offense charged are serious offenses involving the use of a firearm.

The history and characteristics of the defendant, his prior criminal history includes convictions for drug offenses, including in February of 2020 for possessing a controlled substance where he was sentenced to one year in prison; on July 8th of 2015, four years in prison for manufacture or delivery of cocaine; January 18th of 2011, three years; imprisonment for possessing a firearm as a felon ***[.]

Then on May 16th of 2006 he was convicted of manufacture and delivery of cocaine and was sentenced to four years' imprisonment; August 24th of 2006, manufacture or delivery of a controlled substance or a look-alike substance, six years' imprisonment; and in 2002 he was convicted of manufacture or delivery of a controlled substance and sentenced to four years' imprisonment; and in 2001 he was convicted of domestic battery and sentenced to conditional discharge.

***

Any statements made or attributed to the defendant and the circumstances surrounding them, the court is to consider. Based on the report of the victim which is corroborated by the video surveillance, the defendant made threats to shoot or kill the victim during the offense.

Whether defendant is known to possess or have access to weapons, he has a prior conviction for possession of a firearm as a felon. In addition, in this case it is alleged that

he used a firearm, and the police department synopsis does not indicate that the firearm has been recovered.

\*\*\*

Weighing all [the statutory] factors, I find that the nature of the offense, the seriousness of it, the fact that the defendant has access to weapons, and the defendant's history and characteristics, numerous prior convictions and sentences to the Department of Corrections for drug offenses, all establish that there is clear and convincing evidence that the defendant poses a real and present threat to the safety of a specific person, in this case the complaining witness [J.D.], as well as the community by his conduct which I've gone through, and there are no conditions or conditions that can mitigate that real and present threat to the safety of any person or persons, and therefore, I will grant the petition to deny release."

In addition to its statements on the record, the trial court's written order further elucidated its reasons for concluding that less restrictive conditions would not avoid a real and present threat to the safety of J.D. or the community, including (1) the nature and circumstances of the offenses charged; (2) defendant's prior criminal history is indicative of violent, abusive or assaultive behavior; (3) the identity of J.D., a person whose safety defendant is believed to pose a threat, and the fact that defendant threatened to kill him; (4) statements made by defendant, or attributed to defendant, together with the circumstances around those statements; and (5) defendant is known to possess or have access to weapons. The trial court included those factors in its oral pronouncement as well.

¶ 12    On July 11, 2024, defendant filed a motion to reconsider the need for continued detention. A hearing on the motion was held on July 18, 2024, and denied. Defendant then filed a *pro se*

notice of appeal which was dismissed because defendant had not filed the obligatory motion for relief in the trial court. See *People v. Redd*, No. 2-24-0418 (dismissal allowed Aug. 1, 2024).

¶ 13    On August 22, 2024, defendant filed a motion for relief pursuant to Rule 604(h)(2). Relevant here, defendant argued that the State failed to meet its burden of proving that no condition or combination of conditions can mitigate the real and present threat to the safety of J.D. or the community, based on the specific, articulable facts of the case. Defendant maintained that the trial court did not include a summary of its reasons for denying pretrial release, including why lessrestrictive conditions would not mitigate his dangerousness.

¶ 14    On September 4, 2024, a hearing was held on defendant's motion for relief. The trial court denied the motion and stated that it "re-affirms all its previous findings and orders regarding [defendant's] detention."

¶ 15    This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17    In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (the Code). *Id.* § 110-1 *et seq.* Under the Code, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 18    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate

the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 19    We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the trial court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 20    In this appeal, defendant argues that the State did not show clear and convincing evidence that any purported threat could not be mitigated with conditions of relief. "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. He further argues that the trial court erred in granting the petition to detain without sufficiently addressing less restrictive conditions of release.

¶ 21    Under section 110-6.1(g)(3) of the Code, an order for pretrial detention must be based on, among other things, clear and convincing evidence that "no condition or combination of conditions" of pretrial release can mitigate the real and present threat to safety posed by the defendant. *Id.* § 110-6.1(g). If the trial court finds that the State proved a valid threat to someone's safety or the community's safety, it must then determine what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person

or the community ***." *Id.* § 110-5(a). In making this determination, the trial court should consider (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, (4) the nature and seriousness of the specific, real and present threat to any person that would be posed by the defendant's release, and (5) the risk that the defendant will obstruct or attempt to obstruct the criminal justice process *Id.* No single factor is dispositive. *Id.* As with the finding of dangerousness, we review the trial court's findings regarding whether the imposition of conditions on a defendant's pretrial release would mitigate the safety risk posed by the defendant under the manifest weight of the evidence standard. *Indeck Energy Services,* 2021 IL 125733, ¶ 56.

¶ 22    As stated above (*supra* ¶ 11), the trial court considered every factor enumerated in section 110-5(a). Additionally, the trial court noted that defendant's pretrial services report rated his risk of pretrial misconduct an 8 out 14. The trial court further stated that it was concerned, based on the specific articulable facts of the case, that defendant would not comply with any conditions of release. As its findings were made in complete harmony with the enumerated factors within section 110-5(a), we cannot agree that the trial court's granting of the State's petition to detain were against the manifest weight of the evidence.

¶ 23    We next consider defendant's argument that the trial court erred in granting the petition to detain without sufficiently addressing less restrictive conditions of release, specifically electronic home monitoring. Again, we disagree with defendant on this issue. At the hearing on defendant's motion for relief, he argued that he had taken steps while in custody to treat his drug addiction, become a trustee at the jail, and could care for his ailing mother if released with electronic home monitoring. The trial court explicitly spoke to these issues in denying his motion, stating, "while, yes, I agree that it is good that [defendant] is taking positive steps towards bettering himself ***

while he is in custody, that does not alleviate the Court's reasons for denying defendant's pretrial release in this case." The trial court went on to note that electronic home monitoring doesn't tell the Court if defendant violates conditions of relief in real time. The trial court reiterated its concern that defendant would follow conditions of release due to his status as a convicted felon under permanent restriction from possessing firearms. Further the trial court noted that defendant had already been convicted of possessing a firearm as a felon and stands accused of that crime again. As such, we cannot agree that the trial court erred on this issue as it did specifically reject defendant's electronic home monitoring arguments. Defendant's history of firearm possession as a felon, demonstrated ability to obtain a firearm, the specific facts of the present case including defendant's explicit threats to J.D., all support the trial court's properly exercised discretion in determining that no condition or combination of conditions can mitigate the real and present threat defendant poses to J.D. and the community.

¶ 24                                III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 26    Affirmed.